## In re Clemo Milk Products Company, Inc.

CREAMER, Attorney General, July 11, 1972.— You have requested our opinion concerning the authority of the Milk Marketing Board to make payment to milk producers who are creditors of the above company which has filed a petition for arrangement under Chapter XI of the Federal Bankruptcy Act. In this connection the legislature by the Act of December 17, 1971 (No. 97A) has appropriated $200,000 to the board for payment to said producers; said payment to be made into the restricted receipt account with the Milk Marketing Fund known as "Underpayment to Dairy Farmers." In addition the board has a collateral bond which was posted by the bankrupt company in the face amount of $200,000, but which has an approximate market value of only $40,000.

142

By your letter of May 3, 1972, you have asked the following questions:

1. Is the board empowered to distribute the entire $200,000 appropriation regardless of whether a dividend may be subsequently forthcoming to the producers from the bankruptcy court?

2. Is the board empowered to pay the appropriated sum to the producers and to pay them additionally the proceeds from the sale of the collateral bond?

3. Can the board make any distribution to Pennsylvania producers at this time prior to an adjudication of the bankrupty case?

I. You are advised that the Milk Marketing Board is authorized to distribute the entire appropriation of $200,000 to the producers in accordance with Section 511 of the Pennsylvania Milk Control Law of April 28, 1937, P.L. 417, Art. V, §511, as amended, 31 PS §700j-511. Since the money was appropriated for the specific purpose of payment to the dairy farmers as evidenced by the Legislative History of Act No. 97A (See Legislative Journal—House of December 9, 1971, pages 1902-1904), there is sufficient authority for the board to distribute the funds to the producers involved. However, to avoid an overpayment to the producers should they receive a dividend from the bankrupt estate, any payments must be conditioned upon the assignment by the producers to the Commonwealth of their rights as creditors of the bankrupt.

II. The board may also execute on the collateral bond of the bankrupt and pay the proceeds thereof to the producers. The bond, in the face amount of $200,000, was filed with the board by the company pursuant to section 501 of the Milk Control Law of April 28, 1937, P.L. 417, Art. V, §501, as amended, 31 PS §700j-501, which provides that milk dealers or handlers, licensed by the board, shall be required to

file with the board a corporate surety, individual surety or collateral bond, supported by United States or Pennsylvania securities, approved by the board. The bond is required to be in the sum equal to the value of the highest aggregate amount of milk purchased, acquired or received by the dealer or handler from producers in any two months during the preceding calendar year, but shall not exceed $200,000. The bond must be conditioned for the payment by the milk dealer or handler of all amounts due for milk purchased or otherwise acquired from producers during the license year.

The collateral provided by the above company is a Commonwealth bond in the amount of $200,000, payable at maturity in 1992 but which has a present market value estimated to be $40,000. This deficiency between the amount of bond required by law and the actual value of the company's bond is what prompted the Legislature to make the appropriation referred to above. The proper procedure for execution on the bond is for the Board first to bring suit on the bond in accordance with section 509 of the Milk Control Law of April 28, 1937, P.L. 417, Art. V, §509, as amended, 31 PS §700j-509. Should the proceeds of the bond together will the $200,000 appropriation exceed the amount of the bankrupt's indebtedness to the producers, such excess should be paid into the General Fund of the Commonwealth.

III. The distribution to the producers is not governed by the pendency of the bankrupty proceedings. Chapter XI proceedings constitute an arrangement with unsecured creditors and have no effect on debts of the bankrupt which are secured. However, after the security has been disposed of and a debt satisfied to that extent, the balance becomes an unsecured debt and the Commonwealth by virtue of its assign-

ments will be an unsecured creditor in the proceedings. Any amounts received by the Commonwealth as a creditor of the bankrupt should be paid into the General Fund. Normally, a Chapter XI petitioner will obtain a court order which will prevent any creditor from filing a petition in involuntary bankruptcy against the debtor.

The board may therefore make distribution of the funds prior to the termination of the bankruptcy proceedings.